# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Stephanie Barnett o/b/o D.B., a minor, | : | Case No. 1:12 CV 2266 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| Commissioner of Social Security, | : | **AMENDED MEMORANDUM** |
| Defendant, | : | **OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Stephanie Barnett ("Plaintiff") seeks judicial review pursuant to 42 U.S.C. § 405(g) of Defendant Commissioner's ("Defendant" or "Commissioner") final determination denying her claim for Supplemental Security Income ("SSI"), filed on behalf of her minor son, D.B., under Title XVI of the Social Security Act, 42 U.S.C. § 1381 (Docket No. 1). On May 23, 2013, the undersigned Magistrate entered a Memorandum Opinion and Order affirming the decision of the Commissioner's denial of benefits (Docket No. 19). Plaintiff subsequently filed a Motion for Reconsideration on May 28, 2013 (Docket No. 21), which Defendant opposes (Docket No. 22). On September 25, 2013, the Court held an oral argument on this matter. For the reasons that follow, Plaintiff's Motion for Reconsideration is granted; however, the decision of the Commissioner is affirmed.

1

## II. BACKGROUND

The procedural, factual, and medical backgrounds, as well as the applicable case law and statutes, were previously set forth in their entirety in the Memorandum Opinion and Order (Docket No. 19). By way of relevant summary, this Court affirmed the decision of the Commissioner with regards to D.B.'s alleged mental retardation, finding that D.B. failed to meet the requirements of Listing 112.05(D) (Docket No. 19, pp. 13-16 of 21). Specifically, this Court held that, given the evidence presented, "it is clear that while D.B. suffers from both asthma and ADHD, these impairments do not impose any significant level of limitation upon his functioning. Without this finding, D.B. fails to meet all the requirements of Listing 112.05(D)" (Docket No. 19, p. 15 of 21). It is now this very language that has been called into question by Plaintiff's Motion for Reconsideration.

## III. THE ISSUE

Based upon the September 25, 2013, oral argument, this Court now determines the issues to be resolved in this case are whether D.B. is required to satisfy the introductory requirements of Listing 112.05, in addition to subsection (D) itself, and whether he does so. According to Plaintiff, a finding of mental retardation under 112.05 (D) requires only two elements: the requisite IQ score and an additional severe impairment (Docket No. 21, p. 2 of 3). Defendant objects and argues that a finding of mental retardation actually requires satisfaction of three criteria: the requisite IQ score, an additional severe impairment, and the introductory requirement of "significantly subaverage general intellectual functioning with deficits in adaptive functioning" (Docket No. 22). In fact, according to Defendant, without the introductory proof of deficits in adaptive functioning, a claimant's IQ score and additional severe impairment

2

are irrelevant (Docket No. 22). After further consideration, this Court agrees with Defendant's interpretation. Consequently, this Court is now obligated to amend its previous analysis, which failed to take into proper consideration the requirements listed in the introductory paragraph of Listing 112.05.

## IV. STANDARD OF REVIEW

Given their ability to undermine notions of finality and repose, motions for reconsideration are extraordinary in nature and are usually discouraged. *McConocha v. Blue Cross and Blue Shield Mut. of Ohio*, 930 F.Supp. 1182, 1184 (N.D. Ohio 1996). While a court may always take a second look at a prior decision, "it need not and should not do so in the vast majority of instances, especially where such motions merely restyle or re-hash the initial issues." *Id*. (internal citations omitted). Because motions for reconsideration are not mentioned in the Federal Rules of Civil Procedure, they are typically treated as motions to alter or amend judgment under FED. R. CIV. P. 59(e). A motion may be granted if "there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *Rodriguez v. Astrue*, 2012 U.S. Dist. LEXIS 107126, *4-5 (N.D. Ohio 2012) (*citing GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

## V. DISCUSSION

Here, Plaintiff's Motion for Reconsideration is predicated upon a clear error of law. In its Memorandum Opinion and Order, this Court determined that, while D.B. possessed the required IQ score necessary for a finding of mental retardation under Listing 112.05(D), the mere fact that the ALJ also found him to have the severe impairments of asthma and attention deficit hyperactivity disorder ("ADHD") failed to satisfy the second requirement of subsection (D)

(Docket No. 19, p. 15 of 21). This conclusion is incomplete.

At the third step of the sequential evaluation, the Commissioner must determine whether one, or a combination of more than one, of a claimant's severe impairments either meets or are equivalent in severity to one or more the "listed" medical conditions. 20 C.F.R. §§ 404.1520(d), 416.920(d). These "listed" medical conditions "describes for each of the major body systems impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of . . . her age, education, or work experience." 20 C.F.R. § 404.1525(a). Within each listing, the Social Security Administration specifies the medical and other findings needed to satisfy the criteria of that particular listing. 20 C.F.R. § 404.1525(c)(3). A claimant's impairment meets a listed impairment only when it manifests the specific findings described in the set of medical criteria for the particular listed impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d). It is the claimant's burden to bring forth evidence to establish that she meets or equals a listed impairment. *See Evans v. Sec'y of Health and Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1981) (per curiam).

A.    MEETS THE LISTING

Under the Listings, mental retardation is "characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning. The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.05. Therefore, to meet the level of severity required by this listing, a claimant must meet the introductory requirement as well as at least one of the six subsets listed in paragraphs A through F. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.05. In this case, Plaintiff argues that D.B. meets the requirements of paragraph (D),

4

which finds mental retardation when there is "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.05(D). While D.B. may indeed satisfy the requirements of subsection (D), the ALJ concluded, and this Court would now agree, that he does not have the deficits in adaptive functioning necessary to meet the introductory criteria of Listing 112.05, which is also required (Docket No. 12, pp. 15-31 of 605).

According to the ALJ, the evidence suggests only that D.B. suffers from borderline intellectual functioning:

> Considering the entire record, there is no valid diagnosis of mental retardation. No . . . evaluating mental health professional, including school psychologists, have diagnosed the claimant with mental retardation. As a valid diagnosis of mental retardation is not established, the evidence does not demonstrate significant subaverage general intellectual functioning with deficits in adaptive functioning, which is the initial criteria required to meet Listing 112.05D. Therefore, the claimant's borderline intellectual functioning does not meet the criteria of Listing 112.05D.

(Docket No. 12, p. 19 of 605). In her Brief on the Merits and Motion for Reconsideration, Plaintiff first argued that, formal diagnosis or not, D.B.'s verbal IQ score alone was enough to satisfy the preliminary requirements for a finding of mental retardation, namely "subaverage general intellectual functioning" (Docket No. 17, p. 12 of 21; Docket No. 21). Plaintiff provides no basis for this interpretation. The requirement of "subaverage general intellectual functioning" cannot be bifurcated from the rest of the preliminary requirements, which mandate that the subaverage functioning occur in conjunction with "deficits in adaptive functioning." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.05.

Plaintiff does note D.B.'s deficits in adaptive functioning in what she labels as "several key areas" (Docket No. 17, p. 13 of 21). Relying on evaluations conducted by Dr. Deborah

Koricke, Ph.D ("Dr. Koricke"), done in conjunction with Plaintiff's application for disability, and D.B.'s teachers, Plaintiff argues D.B. demonstrated deficits in communication, socialization, academic functioning, behavior, concentration, and persistence (Docket No. 17, p. 13 of 21).

However, such problems are not always indicative of deficits in adaptive functioning. *See Strozier v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 26304, *14 (N.D. Ohio 2013) (*citing Johnson v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 119824, *6 (W.D. Mich. 2011)). Adaptive functioning describes a claimant's effectiveness in various areas, including social skills, communication, and daily living skills, as well as "how well the [claimant] meets the standards of personal independence and social responsibility of his or her age by his or her cultural group." *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993). In *Strozier*, the minor claimant filed for SSI alleging two impairments, asthma and ADHD. 2013 U.S. Dist. LEXIS 26304 at *1-2. His requests were denied initially and upon reconsideration. *Id*. at *2. The claimant subsequently requested an administrative hearing, after which the ALJ again denied his request for benefits. *Id*. On appeal to the District Court, the claimant challenged the Commissioner's decision on two related grounds: (1) the ALJ erred by failing to find that the claimant met Listing 112.05(D) for mental retardation; and (2) the ALJ erred by failing to find that the claimant's impairments functionally equaled the listing level. *Id*. at *12.

During judicial review, the Court noted that the claimant had a long history of behavioral and academic problems. *Strozier*, 2013 U.S. Dist. LEXIS 26304 at *3. The claimant was enrolled in special education classes in the ninth grade after receiving failing grades in his previous academic classes. *Id*. His full scale IQ score was seventy, placing him in the borderline range. *Id*. He had low scores for both math and writing. *Id*. at *4. In the eighth grade, the claimant's

reading abilities were assessed at a fourth to fifth grade level. *Id*. He received numerous discipline referrals for delinquent behavior, including swearing, being disrespectful, causing disruptions, and exhibiting threatening behavior. *Strozier*, 2013 U.S. Dist. LEXIS 26304 at *4. The claimant was suspended on several occasions due to fighting and other aggressive behavior and was taken, at least on one occasion, to juvenile court. *Id*. at 4-5. Despite these difficulties, no medical professional ever determined that the claimant satisfied any Listing under Social Security regulations. *Id*. at *6-7. Based on this evidence, and relying on *Johnson*, the Court found that the minor claimant did not meet Listing 112.05. *Id*. at *15.

The situation in *Strozier* is similar to the case currently before this Court. While it is clear that D.B. has some difficulty in the classroom, these difficulties seem to stem from his ADHD, not mental retardation. During his December 2009 evaluation with Dr. Koricke, Plaintiff admitted that D.B. had been assessed for, but not placed in, special education classes in the first grade (Docket No. 12, p. 536 of 605). He was reassessed halfway through second grade (Docket No. 12, p. 309 of 605). His pre-kindergarten teacher, Kelly McIntyre ("Ms. McIntyre") worried mostly about D.B.'s social and emotional development, describing D.B. as "starving for attention" (Docket No. 12, pp. 148, 150 of 605). His first-grade teacher, Kristin Towarnicke ("Ms. Towarnicke") noted that when D.B. took his ADHD medication, he "function[ed] well" in the classroom as a "typical student," and was "pleasant and work[ed] to relate to others" (Docket No. 12, pp. 201-06 of 605). Ms. Towarnicke was pleased with D.B.'s progress (Docket No. 12, p. 205 of 605). Alexis Pohlman ("Ms. Pohlman"), D.B.'s second-grade teacher, noted that D.B. always required extra time to finish an activity and had disruptive classroom behavior, but suggested that these behaviors were done in an attempt to get her attention (Docket No. 12, pp.

310-12 of 605).

During her January 2008 evaluation of D.B., Dr. Koricke noted that D.B. demonstrated no significant difficulty in relating to others, sat quietly while his mother spoke to the examiner, displayed no attention deficits, and was cooperative and motivated (Docket No. 12, pp. 426-27 of 605). Dr. Koricke diagnosed D.B. with borderline intellectual functioning and mixed receptive-expressive language disorder (Docket No. 12, p. 428 of 605). During a December 2009 evaluation, Dr. Koricke again noted that D.B. was very cooperative during the evaluation and interacted well with the examiner (Docket No. 12, p. 537 of 605). Dr. Koricke reaffirmed her earlier diagnosis (Docket No. 12, p. 539 of 605).

Given the evidence, this Court finds that the Commissioner's decision to deny benefits based on D.B.'s failure to meet the requirements of Listing 112.05(D), including those set forth in the introductory paragraph, was indeed based on substantial evidence. Therefore, the decision of the Commissioner is affirmed.

## B.  FUNCTIONALLY EQUALS A LISTING

Furthermore, the ALJ's conclusion that D.B.'s impairments did not *functionally equal* a listing is also based on substantial evidence. In order to receive a finding of disabled, a child claimant must have a "medically determinable severe impairment" which meets, medically equals, or *functionally* equals the severity of a listed impairment. 20 C.F.R. § 416.924(a)-(d) (emphasis added). To "functionally equal" the Listings, a child claimant's impairment or combination of impairments must result in "marked" limitations in two domains or "extreme" limitations in one domain. 20 C.F.R. § 416.926a(d). Plaintiff alleges that D.B. has marked limitations in the following domains: (1) attending and completing tasks; (2) interacting and

8

relating with others; and (3) health and physical well-being (Docket No. 17, pp. 14-21 of 21). Plaintiff's argument is without merit.

By the ALJ's own admission, D.B. suffers from a borderline range of intellectual functioning (Docket No. 12, p. 18 of 605). On two separate occasions, Dr. Koricke found that D.B. suffered from a borderline range of ability in sensorim and cognitive functioning (Docket No. 12, pp. 426, 537 of 605). Dr. Koricke described D.B. as having "difficulty in understanding or comprehending instructions," and noted that he was "developmentally and socially immature with concrete and simplistic thought content" (Docket No. 12, pp. 426, 537 of 605). D.B.'s second grade teacher, Ms. Pohlman, noted that D.B. suffered from limitations in reading, writing, and math, and always required extra assistance, instructions, and time to complete assignments (Docket No. 12, p. 310 of 605). A March 2011 Evaluation Team Report, as well as state agency examinations, confirmed this assessment (Docket No. 12, pp. 274, 447, 525, 546 of 605).

However, D.B. shows no evidence of "marked" or "extreme" limitations in any other functionally assessed category. The ALJ found D.B. had "less than marked" limitations in: (1) attending and completing tasks; (2) interacting and relating with others; (3) caring for himself; and (4) health and physical well-being (Docket No. 12, pp. 25-31 of 605).

### 1.    ATTENDING AND COMPLETING TASKS

ALJ Dixon found that D.B. had "less than marked" limitations with regard to attending and completing tasks (Docket No. 12, pp. 25-26 of 605). Ms. Towarnicke, D.B.'s first grade teacher, noted that D.B. had some difficulty in changing from one activity to another without being disruptive and in working without distracting himself or others (Docket No. 12, p. 202 of

9

605). She also noted difficulties in D.B.'s ability to pay attention, focus, and complete tasks (Docket No. 12, p. 202 of 605). However, Ms. Towarnicke also reported that D.B. functioned as a "typical student" when he took his ADHD medications (Docket No. 12, p. 206 of 605).

Ms. Pohlman, D.B.'s second grade teacher, reported similar findings. Ms. Pohlman reported that D.B. had difficulty paying attention and focusing, and, as a result, was always given extra assistance, instructions, and time to complete tasks (Docket No. 12, p. 310 of 605). She noted that D.B. could have disruptive classroom behaviors such as excessive talking out and noise-making (Docket No. 12, p. 312 of 605). However, Ms. Pohlman also reported that D.B.'s behaviors seemed to be done in an effort to gain her attention (Docket No. 12, p. 312 of 605). During the Evaluation Team Report, school psychologist Karen Slygh ("Ms. Slygh") reported that D.B. had trouble focusing on lessons and sought out attention for his negative behaviors (Docket No. 12, p. 279 of 605). Ms. Slygh concluded that D.B.'s behaviors were secondary to his diagnosis of ADHD, noting that D.B. worked well one-on-one (Docket No. 12, pp. 279, 299 of 605).

### 2.   INTERACTING AND RELATING WITH OTHERS

The ALJ similarly reasoned that D.B. had "less than marked" limitations with regard to interacting with and relating to others (Docket No. 12, pp. 26-27 of 605). When asked, D.B. stated that he did not get along well with his siblings (Docket No. 12, p. 44 of 605). However, Plaintiff stated that D.B. got along with other children "pretty good" (Docket No. 12, p. 58 of 605). Ms. Towarnicke noted that D.B., when medicated, was "pleasant and work[ed] well to relate with others" (Docket No. 12, p. 203 of 605). Ms. Pohlman noted that D.B. was capable of working with others and always returned borrowed items back to where they belonged (Docket

No. 12, p. 311 of 605). During both Disability Assessments, Dr. Koricke noted that D.B. displayed no difficulty in relating to others (Docket No. 12, pp. 426, 538 of 605). Dr. Koricke also noted that D.B. was friendly and smiled continually (Docket No. 12, p. 427 of 605). Although two speech-language pathologists recommended some speech therapy for D.B., they both noted that D.B.'s speech was intelligible and he was able to adequately communicate his wants and needs (Docket No. 12, pp. 432, 543 of 605).

### 3.    CARING FOR HIMSELF

ALJ Dixon also concluded that D.B. had "less than marked" limitations with regard to caring for himself (Docket No. 12, pp. 28-29 of 605). Plaintiff's testimony was particularly negative in this category. Plaintiff stated that she has to continually remind D.B. to wash himself and brush his teeth (Docket No. 12, pp. 48, 57-58 of 605). Plaintiff also testified that D.B. does not clean his room and hides food and dishes under the bed (Docket No. 12, p. 59 of 605). However, during both Disability Assessments, Dr. Koricke noted that D.B. appeared clean and neat, and presented with a good appearance (Docket No. 12, pp. 427, 536 of 605). Ms. Towarnicke noted that D.B. was making improvements in controlling his emotions and responding appropriately to changes in his own mood (Docket No. 12, p. 205 of 605). Ms. Pohlman noted that D.B.'s ability to cope with school stress and environment changes was normal (Docket No. 12, p. 311 of 605).

### 4.    HEALTH AND PHYSICAL WELL-BEING

ALJ Dixon also concluded that D.B. had "less than marked" limitations in the area of health and physical well-being (Docket No. 12, pp. 29-31 of 605). D.B. has been treated for asthma since he was an infant (Docket No. 12, pp. 350, 376 of 605). This asthma sometimes

11

required D.B. to miss school in order to undergo at-home nebulizer treatments (Docket No. 12, pp. 54-57 of 605). Despite missing school, Ms. Pohlman observed no physical limitations (Docket No. 12, p. 311 of 605). In July 2008, Dr. James T. Liang, M.D. ("Dr. Liang") reported that D.B. had only mild persistent asthma (Docket No. 12, p. 444 of 605). In May 2009, D.B. was admitted to the hospital for his asthma (Docket No. 12, p. 494 of 605). His hospital stay was short, lasting only two days, and his condition improved with treatment (Docket No. 12, p. 569 of 605). Hospital notes indicated that D.B. had "poor compliance" with his asthma medications (Docket No. 12, p. 569 of 605). Based on this evidence, it appears that D.B.'s asthma was under control with proper medication and when he was *compliant* with those medications.

### 5.  MOVING ABOUT AND MANIPULATING OBJECTS

Finally, the evidence clearly supports the ALJ's finding that D.B. had no limitation with regard to moving about and manipulating objects (Docket No. 12, pp. 27-28 of 605). During all three of D.B.'s Childhood Disability Evaluations, no examiner found any limitation in this category (Docket No. 12, pp. 448, 526, 547 of 605). Ms. Towarnicke's and Ms. Pohlman's observations yielded similar results (Docket No. 12, pp. 204, 311 of 605). The Evaluation Team Report found that D.B.'s fine and gross motor skills were within an average range (Docket No. 12, pp. 277-78 of 605).

Given D.B.'s educational and medical record as a whole, the ALJ determined that D.B. did not meet or functionally equal the listing for mental retardation 112.05(D) (Docket No. 12, p. 18 of 605). Rather, the ALJ found that D.B. suffered from borderline intellectual functioning coupled with mixed receptive-expressive disorder and ADHD (Docket No. 12, p. 18 of 605). Given D.B.'s abilities and limitations, this finding was not inappropriate based on the substantial

12

evidence of record.

Finally, and perhaps most importantly for judicial review, *even if* the evidence cited by Plaintiff were sufficient to demonstrate that D.B.'s impairments satisfied the preliminary Listing criteria, the ALJ's decision is still entitled to affirmation. In Social Security cases,

> a court's review of the [ALJ's] decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence. The substantial-evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion. The substantial-evidence standard presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. Therefore, if substantial evidence supports the ALJ's decision, the court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405-06 (6th Cir. 2009). While Plaintiff may disagree with the ALJ's findings with regard to D.B.'s impairments and satisfaction of the Listing criteria, the Magistrate finds the ALJ's conclusions to be well within the "zone of choice" based upon the supplied evidence.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration is granted to correct the clear error of law present in the previously filed Memorandum Opinion and Order. Based upon the revised analysis, the decision of the Commission is affirmed.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   October 7, 2013